1   Scott R. Miller (SBN 112656)
    Email:  smiller@cblh.com
2   Keith Fraser (SBN 216279)
    Email:  kfraser@cblh.com
3   CONNOLLY BOVE LODGE & HUTZ LLP
    333 South Grand Avenue, Suite 2300
4   Los Angeles, CA 90071
    Telephone:  (213) 787-2500
5   Facsimile:   (213) 687-0498

6   Jeffrey L. Eichen (*pro hac vice*)
    Email:  jeichen@cblh.com
7   CONNOLLY BOVE LODGE & HUTZ LLP
    1007 North Orange Street, P.O. Box 2207
8   Wilmington, DE 19899
    Telephone:  (302) 658-9141
9   Facsimile:  (302) 658-5614

10  Attorneys for Defendant
    THE DRESS BARN, INC.
11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14                  SAN JOSE DIVISION

15

16  U.S. ETHERNET INNOVATIONS, LLC,          No. C 10-05254 JW

17              Plaintiff,                    **MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF
18        v.                                 RETAILER DEFENDANTS' MOTION
                                             TO STAY**
19  AT&T MOBILITY, LLC, et al.,
                                             Date:    January 24, 2011
20              Defendants.                   Time:    9:00 a.m.
                                             Place:   Courtroom 8, 4th floor
21                                           Judge:   Hon. James Ware

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ...................................................................... 2

      A.    With four patents, 161 claims and thousands of potentially accused
            products, the case filed by USEI imposes nearly an impossible burden
            on the defendants and the Court. ............................................................... 2

      B.    The Acer matter includes the real parties in interest – USEI and the
            Chip Suppliers, who design and manufacture the specific network
            interface adapter chips that USEI is actually accusing of infringement. ... 6

III.  ARGUMENT .......................................................................................... 8

      A.    Staying This Case Against the Retailers While the Acer Matter
            Proceeds between USEI and the Chip Suppliers is an Appropriate
            Exercise of the Court's Discretion. .......................................................... 8

      B.    The Court has granted a stay in analogous situations, such as when a
            reexamination is pending or under the "customer suit" doctrine. ............. 12

IV.   CONCLUSION ..................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

Cases

*A.P.T., Inc. v. Quad Envtl. Tech. Corp., Inc.,*
    698 F. Supp. 718 (N.D. Ill. 1988) ...................................................................14

*ASCII Corp. v. STD Entertainment USA, Inc.,*
    844 F. Supp. 1378 (N.D. Cal. 1994) .............................................................13

*Ciena Corp. v. Nortel Networks,*
    2005 U.S. Dist. LEXIS 20095 (E.D. Tex. May 19, 2005) ...........................14

*Codex Corp. v. Milgo Elec. Corp.,*
    553 F.3d 735 (1st Cir. 1977) .........................................................................14

*eBay Inc. v. MercExchange, LLC,*
    547 U.S. 388 (2006) ...................................................................................2, 12

*Filtrol Corp. v. Kelleher,*
    467 F.2d 242 (9th Cir. 1972) ...........................................................................8

*Finisar Corp. v. Source Photonics, Inc.,*
    No. 10-032 (N.D. Cal. May 5, 2010) ............................................................11

*Gould v. Control Laser Corp.,*
    705 F.2d 1340 (Fed. Cir. 1983) .....................................................................13

*Katz v. Lear Siegler, Inc.,*
    909 F.2d 1459 (Fed. Cir. 1990) .....................................................................14

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,*
    342 U.S. 180, 72 S. Ct 219 (1952) ...............................................................14

*Landis v. North American Co.,*
    299 U.S. 248 (1936) .........................................................................................9

*Methode Elecs., Inc. v. Infineon Techs. Corp.,*
    2000 WL 35357130 (N.D. Cal. Aug. 7, 2000) .............................................13

*Quanta Computer, Inc. v. LG Elecs., Inc.,*
    553 U.S. 617 (2008). ......................................................................................10

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.,*
    458 F.3d 1335 (Fed. Cir. 2006) .....................................................................14

*Voda v. Cordis Corp.,*
    536 F.3d 1311 (Fed. Cir. 2008) ...............................................................2, 12

*WiAV Networks, LLC v. 3Com Corp.,*
    2010 WL 3895047 (N.D. Cal. October 1, 2010) ..........................................11

*Zilog, Inc. v. Quicklogic Corp.*,
    2004 WL 2452850 (N.D. Cal. 2004)............................................................................13

<u>Statutes</u>

35 U.S.C. § 286 ............................................................................................................2, 11

## I.    INTRODUCTION

In this case, U.S. Ethernet Innovations, LLC ("USEI"), has brought claims of patent infringement against a group of defendants who appear to have been chosen based on their use of common electronic devices (everything from laptop computers, desktop computers, business phone systems, network-enabled printers and copiers, fax machines, servers, modems, routers and even cash registers) and their lack of knowledge of the network interface adapter chip technology that is the subject matter of the four patents-in-suit.  Indeed, it appears that USEI has made a tactical decision to sue a group of defendants that it believes to be uniquely unsuited to address the substance of these patents so that the defendants will simply give up and opt for settlement.  But these defendants are simply customers of customers (or even customers of customers of customers) of the *real* defendants in interest – the semiconductor chip suppliers (Intel, Atheros, Marvell, NVIDIA and Broadcom) ("Chip Suppliers") who make the specific components USEI accuses of infringement.  And most of these *real* defendants in interest are already defending against USEI's claims of patent infringement in a separate case involving the exact same patents and, in all likelihood, many of the same products accused here, entitled *U.S. Ethernet Innovations, LLC v. Acer, Inc., et al.*, Civil Action No. 5:10-CV-3724-JW (PVT) ("*Acer*").  The Chip Suppliers have the highly specialized, technical background and proprietary knowledge necessary to defend against patent infringement claims and assert defenses that are common to both cases.

The Chip Suppliers have already requested that the *Acer* case be restructured so that USEI's claims against their customers (computer manufacturers such as Acer, Dell, Fujitsu, Toshiba and Hewlett Packard) are stayed – allowing only the real parties in interest, USEI and the Chip Suppliers, to go forward.  And the same reasoning applies doubly to the defendants in this case.  Staying this case in favor of the restructured *Acer* case will preserve judicial resources, create a fair and manageable process for adjudicating USEI's claims, and will not prejudice USEI, considering that (i) the *Acer* case is comparatively advanced (with discovery underway, and the parties having served infringement and invalidity contentions) while the parties have not advanced past motions to dismiss in this case; (ii) the restructured *Acer* case will likely dispose of the claims in this case and will certainly simplify it by eliminating the need to determine whether thousands or tens of thousands of

1  products used by these defendants infringe the patents-in-suit,[1] and (iii) USEI is a non-practicing

2  entity which is not entitled to injunctive relief,[2] and its claims for damages will be unaffected by the

3  stay.[3]

4       For the sake of judicial efficiency and simple fairness, the Retailer Defendants respectfully

5  request that this matter be stayed while the real parties in interest, USEI and the chip suppliers,

6  proceed with their claims in the restructured *Acer* matter.

7

8  **II.    STATEMENT OF FACTS**

9       **A.    *With four patents, 161 claims and thousands of potentially accused***

10  ***products, the case filed by USEI imposes nearly an impossible burden on***
   ***the defendants and the Court.***

11

12       USEI originally filed this action in the Eastern District of Texas on March 10, 2010 against

13  defendants AT&T, Barnes & Noble, Claire's Stores, J.C. Penney, Sally Beauty, and Home Depot.

14  On May 19, USEI added defendants Ann Taylor, Harley-Davidson, Kirkland's, Macy's, New York &

15  Company, Lerner New York, RadioShack, Rent-A-Center, Target and Dress Barn.[4]

16

17

18  ─────────────────────

19  [1] If the patents are found to be invalid or unenforceable, the case will end for everyone. Even if the
   court finds the patent valid and enforceable, a finding that the Chip Suppliers' components do not

20  infringe will resolve this question with respect to any accused products in this action that include
   those components. Such a finding would drastically simplify, or possibly even resolve, this case.

21  Indeed, even if the *Acer* action results in a determination that those products *infringe*, this case would
   be resolved with respect to those Chip Supplier components because the defendants here would be

22  able to rely on an express or implied license, or invoke the doctrine of patent exhaustion.

23  [2] *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *Voda v. Cordis Corp.*, 536 F.3d
   1311, 1329 (Fed. Cir. 2008).

24
25  [3] A prevailing plaintiff is generally entitled to recover damages for infringement occurring up to six
   years prior to the filing of the Complaint. 35 U.S.C. § 286.

26  [4] For simplicity, the defendants are identified by their popular brand names and not the names of the
   specific corporate entities named by USEI. For several defendants, USEI named more than one

27  entity – such as Ann Taylor Stores Corp. and Ann Taylor Retail, Inc. USEI dismissed Target from
   the litigation on May 25, 2010.

28

─────────────────────

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY
Case No. C 10-05254 JW

1    The defendants filed motions to dismiss in June 2010 and have not answered the Amended

2    Complaint.[5]  The Eastern District of Texas did not conduct a scheduling conference prior to

3    transferring this action to the Northern District of California on November 19, 2010.  This case is still

4    in the initial stages—the parties have yet to begin discovery, and USEI has not served infringement

5    contentions.

6    Most of the defendants in this action (10 out of 15) are large national chain retailers in the

7    business of selling clothing, accessories, cosmetics or home furnishings.  Out of the remaining

8    defendants, one is a hardware and home improvement retailer, one is a book, magazine and electronic

9    reader retailer, one is a cell phone service provider and retailer, one is a consumer electronics and cell

10   phone retailer, and one manufactures and sells motorcycles and related accessories through

11   independent dealerships.

12   The technology at issue in this lawsuit, however, stands in stark contrast.  In its lawsuit, USEI

13   asserts that the defendants infringe four patents related to network interface adapter chips, which

14   relay information between a host device's processor and a network.  This network interface adapter

15   chip may, for example, relay information between a laptop computer's processor and an Ethernet

16   network.  The four patents-in-suit are also at issue in the *Acer* matter, and these patents are entitled:

17          5,307,459    "Network Adapter with Host Indication Optimization"

18          5,434,872    "Apparatus for Automatic Initiation of Data Transmission"

19          5,732,094    "Method for Automatic Initiation of Data Transmission"

20          5,299,313    "Network Interface with Host Independent Buffer Management"

21   The claims of these patents are directed to a particular structure and operation for a network adapter

22   chip and specify, for example, the contents of the adapter chip's frame buffer, the timing for loading

23   this buffer, and the point at which the adapter chip should begin to transfer data on a network.[6]  The

24   four patents-in-suit include 161 claims.

25   _____

26   [5] These motions are currently pending and scheduled for hearing on March 7, 2011.  Dkt. No. 223.

27   [6] *See, e.g.*, U.S. Patent No. 5,732,094 at col. 28, ll. 12-23 (Claim 1: "A method for transmitting a frame of data from a host system through a network interface device to a network …"); U.S. Patent

28   No. 5,299,313 at col. 28, ll. 12-23 (Claim 1: "An apparatus for controlling communication between a

(Footnote Continued on Next Page.)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY
Case No. C 10-05254 JW

1    Despite the number of claims, the detail of the subject matter, and the disparity between the

2    business of the defendants and the claims of the patents-in-suit, the Amended Complaint fails to

3    identify the products that allegedly infringe the claims of the patents-in-suit.[7]  The defendants sought

4    clarification from USEI in an attempt to identify which products (or even which types of products)

5    were accused of infringement, and in response, USEI indicated that it contends that its four patents

6    extend to literally every computer or electronic device that includes an Ethernet port because each of

7    these products must include an Ethernet network interface adapter chip.  (USEI apparently alleges,

8    despite a mountain of prior art, that any Ethernet network interface adapter chip infringes its patents-

9    in-suit).

10    In fact, in June 2010, USEI sent letters to each of the retailer defendants requesting

11    "additional information that will assist us [USEI] as we endeavor to compile an exhaustive list of

12    products for our infringement contentions under the Local Patent Rules."  To that end, USEI

13    requested that each defendant provide **the "make and model number" for every single one of each**

14    **of the following devices used by each defendant in the past six years:**[8]

15    all laptop or portable computers               all Ethernet-capable scanners

16    all computer servers                          all Ethernet-capable fax machines

17    all desktop computers                         all Ethernet-capable multi-function devices

18    all point-of-sale devices                     all Ethernet-capable inventory control devices

19    all cash registers                            all network interface cards

20    all Internet Protocol (IP) phones             all Ethernet-capable projectors

21    all Ethernet-capable printers                 all Ethernet-capable display devices

22    _____

(Footnote Continued from Previous Page.)

host system and a network transceiver coupled with a network … comprising … host interface means … for managing data transfers between the host address space and the buffer memory … and network interface means … for managing data transfers between the buffer memory and the network transceiver.").

[7] *See* Defendants' Motion to Dismiss, Dkt. Nos. 76 and 134.  This motion is currently scheduled for hearing on March 7, 2011.  Dkt. No. 223.

[8] *See* example letters from John C. Herman to various defendants, dated June 16, 2010, attached as Exhibit "A."

| | |
|---|---|
| all Ethernet-capable presentation devices | all network media players |
| all Ethernet-capable security cameras | all Ethernet-capable access control systems |
| all routers | all set top boxes |
| all hubs | all DSL modems |
| all switches | all cable modems |
| all network storage devices | all other Ethernet-capable devices of any kind |

Evidently, USEI believes that its four patents apply, in one way or another, to virtually every piece of Ethernet-compatible electronic and computer equipment in existence – regardless of its function or use. The list of these items that each defendant uses in its normal business operations, if such an accounting could even be completed, is simply staggering. The defendants have thousands of stores or other facilities throughout the United States, and USEI would have each defendant account for – and presumably defend – every single brand, model and version of notebook computer, desktop computer, network-enabled printer, copier, phone system, scanner, fax machine, server, router, hub, modem, and the list goes on and on. The number of products that USEI may accuse of infringement in this case may reach into the tens of thousands.

But this case is even more complex than that. The claims demonstrate that it is not actually these products (the computers, the printers, copiers, routers, etc.) that would infringe the claims of the patents-in-suit, but rather it is the network interface adapter chip within each of these products that would potentially infringe the claims. Thus, before the merits of USEI's allegations could even begin to be addressed, the parties would need to determine which network interface adapter chip is used in each of the potentially tens of thousands of accused Ethernet-compatible electronic products used by the defendants.

To make matters worse, the structure and operation of the network interface adapter chip is highly-technical and proprietary information. None of the defendants in this matter are involved, in any way, however remotely or indirectly, with designing or manufacturing these adapter chips. The network interface adapter chip is simply one of hundreds of components located inside a product (*e.g.*, a computer, copier, or phone system) purchased by the defendants. These defendants know little or nothing about the structure or operation of these adapter chips, and the parties to this lawsuit

1   will be unable to organize this mess without seeking information from the companies who design and

2   manufacture these adapter chips.  The good news is that these companies—the intervenors in the

3   *Acer* matter—are ready, willing, and able to organize the chaos.

4

5   **B.**   ***The* Acer *matter includes the real parties in interest – USEI and the Chip***
        ***Suppliers, who design and manufacture the specific network interface***
6        ***adapter chips that USEI is actually accusing of infringement.***

7        On October 9, 2009, USEI sued nearly every major computer manufacturer—Gateway,

8   Hewlett Packard, Sony, Toshiba, Acer, Apple, ASUSTeK, Dell, and Fujitsu—alleging infringement

9   of the same four patents at issue in this action.[9]  When USEI served infringement contentions against

10  the computer defendants in that case, USEI accused at least 2,337 separate products of infringement.

11  With the intervention of the chip suppliers, USEI has now identified at least 5,000 separate products

12  of infringement.[10]  And yet out of this universe of accused products, the only component identified as

13  infringing the patents-in-suit is each product's network interface adapter chip and associated

14  proprietary software.  These network interface adapter chips and their associated software are

15  designed and manufactured by chip suppliers such as Intel, Atheros, Marvell, NVIDIA and

16  Broadcom (the "Chip Suppliers").

17       As described by the Chip Suppliers in the *Acer* matter, a network interface adapter is typically

18  made up of one or several semiconductor chips and controlled by proprietary software embedded in

19  the chips by the Chip Supplier.  These network interface adapter chips and embedded software are

20  not designed or manufactured by any of the defendants in this action or the computer manufacturers

21  in *Acer*.  Rather, the computer manufacturers (Acer, Dell, Fujitsu and others) simply purchase the

22  chips and embedded software from the Chip Suppliers (Intel, Atheros, NVIDIA and others) and

23

24

25  [9] *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, et al., United States District Court for the Eastern
    District of Texas, Civil Action No. 6:09-CV-448 JDL.

26  [10] *See, e.g.*, USEI's Notice of Conforming Patent L.R. 3-1 Infringement Contentions to the Acer
27  Defendants *and* USEI's Notice of Conforming Patent L.R. 3-1 Infringement Contentions to the Sony
    Defendants (attached as Exhibits B and C to the Intervenors' and Defendants' Motion to Sever and
28  Restructure the Case Pursuant to F.R.Civ.P. 20(a)(2), filed in *Acer*).

1    incorporate them – without modification – into finished products like laptops, desktops, servers and

2    other devices.

3          USEI's own infringement contentions demonstrate that these network interface adapter chips

4    are the only products at issue in both this matter and in *Acer*.  While the *Acer* matter was pending in

5    the Eastern District of Texas, the local rules required USEI to identify "as specific[ally] as possible"

6    each one of the products accused of infringement.  USEI did not, however, provide a claim chart for

7    each of more than 5,000 accused products; instead, USEI provided only 33 charts.  These charts did

8    not address how specific computers infringed particular patent claims, and in fact the charts make no

9    mention of any specific computer products.  Instead, the charts were directed solely at how each

10   network interface adapter chip infringed particular patent claims.

11         For example, as described in the motion to sever pending in the *Acer* matter, USEI's

12   infringement contentions listed some Acer computers as allegedly infringing a group of claims of the

13   '459 patent:[11]

14                  *The following Acer products infringe claims 1, 2, 3, 6, 7, 12, 14, 22, 24,*
                    *25, 26, 31, 32, 44, 46, 47, and 49 on the '459 Patent as shown in the attached*
15                  *claim chart number 1:*

16                  *Altos R310, Altos G5350, Altos G300, Altos G320, Altos G535, Altos*
                    *G535, Altos G901, Altos R510, Altos R700, Altos R710, Aspire M5620.*
17
           Yet USEI's claim chart number 1 contains no mention of these computers.  Instead, the chart
18
     only mentions devices based on the type of network interface adapter chip they include: "a device
19
     from the Intel PCI/PCI-X Gigabit Ethernet Controller Family, including but not limited to the 82540,
20
     82541, 82542, 82543, 2544, 82545, 82546, and/or 82547 Ethernet Controllers, and compatible
21
     devices and variants thereof (hereinafter the '8254x')."[12]
22
           In other words, by USEI's own admission, its case is not actually about the specific features,
23
     functions or characteristics of Acer computers at all.  Instead, the case is about devices of any type
24

25   _____

26   [11] Exhibit D to the Intervenors' and Defendants' Motion to Sever and Restructure the Case Pursuant
     to F.R.Civ.P. 20(a)(2), filed in *Acer*.

27   [12] Exhibit E to the Intervenors' and Defendants' Motion to Sever and Restructure the Case Pursuant
     to F.R.Civ.P. 20(a)(2), filed in *Acer*.
28

that incorporate, for example, the Intel PCI/PCI-X Gigabit Ethernet Controller, specifically, the Intel 82540, 82541, 82542, 82544, 82545, 82546 and 82547 chips.

And USEI's other infringement contentions are similar to those against Acer. In each case, USEI makes no more than a passing reference to the thousands of products into which a network interface adapter chip might have been incorporated. Instead, each claim chart is directed solely at the specific features and functions of a network interface adapter chip manufactured and sold by one of the Chip Suppliers.

Because USEI's claims are based entirely on the specific features and functions of these chips, the Chip Suppliers, who manufacture and sell these items, have now intervened in the *Acer* action to protect their customers (the computer manufacturers) and defend their products – the chips themselves. In the *Acer* matter, the Chip Suppliers (lead by Intel) have filed a Motion to Sever and Restructure the Case, seeking to structure the *Acer* matter and this case in a logical and efficient manner. In that motion, the Chip Suppliers have requested that this case be stayed pending resolution of the claims between USEI and the Chip Suppliers.

By this motion, the defendants in this case likewise request that this case be stayed pending resolution of the claims between USEI and the Chip Suppliers, as this is the only fair and efficient way to proceed.

## III.   ARGUMENT

### A.   *Staying This Case Against the Retailers While the Acer Matter Proceeds between USEI and the Chip Suppliers is an Appropriate Exercise of the Court's Discretion.*

District courts have broad, inherent authority to reorganize and reorder the issues presented for litigation before them. As stated by the Ninth Circuit:[13]

> A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants. The exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing

---

[13] *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972) (citations omitted).

*interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.*

This inherent authority includes the power to stay a case. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[14]

According to the Ninth Circuit in *Filtrol*, the decision to stay is based upon the court's sound discretion and basic principles of equity, fairness, efficiency and conservation of precious judicial resources. When applied to this case, these principles weigh strongly in favor of granting a stay of this case pending resolution of the claims between the Chip Suppliers and USEI in the *Acer* matter.

The *Acer* matter was filed in early October 2009, five months before USEI filed the original complaint in this case in March 2010. The *Acer* matter's head-start has dramatically increased since that time because of delays in this case,[15] because the defendants in this case do not yet know which products are accused of infringement, and because discovery in this case has not even begun. As of today, the *Acer* matter is effectively nine months to one year ahead of the instant case.

Add to this the fact that both cases involve many of the same questions of law and fact. The validity and enforceability of the four patents-in-suit are being challenged in the *Acer* matter, and these same issues will be raised in this case. In *Acer*, the parties will determine whether the network interface adapter chips manufactured by the Chip Suppliers infringe the four patents-in-suit. It appears that these same adapter chips are also the basis of USEI's claims in this case. Given its head-start, the *Acer* matter will resolve these questions first, and indeed, this is as it should be. The defendants in this case know little or nothing regarding the structure and operation of the network

---

[14] *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936).

[15] For example, USEI filed an Amended Complaint on May 19, 2010, adding several new defendants to the lawsuit, but USEI's Amended Complaint failed to identify the accused products. The Eastern District of Texas did not rule on these motions or order a scheduling conference prior to transferring the action to this Court on November 19, 2010.

1   interface adapter chips.  The Chip Suppliers, who keep this information highly confidential and

2   proprietary, are in the best position to defend their own products.

3         Because the dispositive issues may be resolved by the *Acer* proceedings, the parties in this

4   case and the Court would waste resources proceeding with parallel, duplicative, and potentially

5   unnecessary litigation.  In fact, it is possible and even likely that resolution of the claims between

6   USEI and the Chip Suppliers in the *Acer* matter will resolve claims between USEI and the defendants

7   in this matter.  For example, if the patents-in-suit are found to be invalid or unenforceable in the *Acer*

8   matter, this case is moot.  And regardless of the outcome, the *Acer* matter will certainly resolve all

9   claims between USEI and the defendants for thousands or tens of thousands of products that

10  incorporate any of the network interface adapter chips manufactured and designed by the Chip

11  Suppliers in the *Acer* matter.  Either the Chip Suppliers will prove that these chips do not infringe, or

12  USEI will be successful and will receive damages (either by verdict or settlement) from the Chip

13  Suppliers.  Either result would resolve USEI's claims as to these components, making it unnecessary

14  to relitigate those issues in this case.[16]

15        Moreover, allowing the case to proceed in its current form against these 15 defendants and

16  potentially tens of thousands of accused devices is the dictionary definition of disorderly, unfair and

17  unmanageable litigation.  The defendants are predominately large national chain retailers in the

18  business of selling clothing, accessories, cosmetics or home furnishings.  While the claims of the

19  patents-in-suit are directed to the structure and operation of network interface adapter chips, none of

20  the defendants has any connection whatsoever to the creation, design, or manufacturing of any of the

21  accused network interface adapter chips.  As evidenced by its correspondence, USEI intends to

22  accuse thousands or tens of thousands of common electronic and computer devices.  This would be

23  unmanageable by itself, but this case actually includes another level of complication.  Because the

24  claims of the patents-in-suit focus on the specifics of the structure and operation of the network

25  interface adapter chip within these thousands of potentially accused products, the defendants would

26  need to identify the specific network interface adapter chip found in each of these accused products

27  ———————————————

[16] *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625-28 (2008).

28

1  (probably requiring every single device to be disassembled or even broken apart). But, even

2  assuming the defendants could complete this task, the defendants would be unable to narrow the

3  complete list of network interface adapter chips to a manageable set of representative products

4  without assistance from third-parties. The companies who sell these adapter chips, such as the Chip

5  Suppliers, would need to provide the information regarding the highly technical and proprietary

6  structure and functioning of these adapter chips in order for the parties in this case to meaningfully

7  identify representative products and investigate USEI's infringement allegations against those

8  products.

9       This confusion and unnecessary complexity and burden is a direct result of USEI's decision to

10  sue the customers of customers (or customers of customers of customers), who have no actual

11  knowledge regarding the network  interface adapter chips at issue in this case, rather than the

12  companies who design and manufacture those adapter chips. The "monumental mess" created by

13  USEI's strategy presents an unreasonable burden on the defendants to this case.[17] For the reasons

14  provided in *WiAV* and *Finisar*, proceeding with the instant case imposes an inequitable burden on 15

15  disparate defendants with potentially tens of thousands of accused products. A stay pending

16  resolution of the claims between USEI and the Chip Suppliers is the only sensible and reasonable

17  means of ameliorating the inefficiency, burden and inherent unfairness of USEI's intentionally

18  created mess.

19       Finally, and crucially, USEI would suffer no appreciable harm or prejudice from staying this

20  case pending resolution of its claims against the Chip Suppliers in the *Acer* matter. First, as noted

21  above, the *Acer* matter is approximately one year ahead of this case. Second, USEI has not invested

22  any effort into this case that would be lost by a stay: discovery has not begun, USEI has not served

23  infringement contentions, and a trial date has not yet been set. Third, a stay would not affect the

24  amount of damages collectable by USEI, as a prevailing plaintiff is generally entitled to recover

25

26

27  [17] *See WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at *1 (N.D. Cal. October 1, 2010) (condemning joinder of such a large number of unrelated parties); *Finisar Corp. v. Source Photonics, Inc.*, No. 10-032 (N.D. Cal. May 5, 2010) (same).

28

1  damages for infringement occurring up to six years prior to the filing of the complaint.[18]  Fourth,

2  USEI is not entitled to injunctive relief in this case.[19]  USEI does not manufacture network interface

3  adapter chips, computers or any other devices or products, USEI does not compete with any of the

4  defendants here or in the *Acer* matter, and USEI has not lost a single customer or sale because of any

5  act of alleged infringement.  Indeed, the patents-in-suit expire in mid-2012, and USEI has not sought

6  a preliminary injunction in either the *Acer* matter or the instant action.  Finally, the four patents-in-

7  suit were issued between 1994 and 1998, and yet USEI and its predecessor waited **approximately 15**

8  **years** before bringing these claims against the defendants.  The defendants in this case are all well-

9  established, widely-known businesses that were in existence long before 1994.  Each of the

10  defendants are on-going businesses and can be pursued for patent infringement liability, if any, two

11  or three years from now as easily as today.  Given the plaintiff's own extensive delay, it strains

12  credulity for USEI to now argue that a comparatively small additional delay would prejudice USEI.

13         In short, the factors identified by the Ninth Circuit in *Filtrol* demonstrate that a stay is

14  appropriate in the instant case.  USEI would not be prejudiced from the granting of a stay; however,

15  if this case were to proceed, the defendants would be forced to endure duplicative, disorganized,

16  burdensome, technically complicated, and likely unnecessary litigation.  Further, judicial efficiency

17  would best be served by proceeding first with the case between USEI and the Chip Suppliers in the

18  *Acer* matter, as the resolution of issues between these parties will drastically simplify the questions of

19  law and fact presented in the instant case.

20         **B.      The Court has granted a stay in analogous situations, such as when a**
       **reexamination is pending or under the "customer suit" doctrine.**
21

22         The facts described in the previous section, in themselves, are sufficient to show that there is

23  good cause for granting a stay in this case.  If there is any doubt on this point, however, we

24  respectfully direct the Court's attention now to two situations analogous to the one presented in this

25

26

---

27  [18] 35 U.S.C. § 286.

28  [19] *See eBay Inc.*, 547 U.S. at 391; *Voda*, 536 F.3d at 1329.

1   case where the Court has granted similar forms of reordering or restructuring of patent infringement

2   litigation.

3           *First Analogous Situation – Motions to Stay Pending Reexamination*

4         One analogous situation that the Court has encountered often involves the decision to grant a

5   stay of patent litigation pending a reexamination.  When there is a reexamination of a patent, the

6   court "has the inherent ability to grant a stay of proceedings provided that it does not cause undue

7   prejudice or present a clear tactical disadvantage to the non-moving party."[20]  As this Court has

8   previously ruled, other factors to be considered in connection with a stay pending reexam include the

9   stage of the litigation, whether discovery is or will be almost completed, and whether the matter has

10  been marked for trial.[21]  "There is a liberal policy in favor of granting motion to stay proceedings

11  pending the outcome of reexamination proceedings."[22]

12        The rationale behind granting a stay pending reexamination applies with equal force to the

13  instant case.  Like a stay pending reexamination, this stay would "simplify the issues in the case"

14  because one or more claims may be invalidated in a co-pending proceeding.[23]  In fact, these

15  principles apply even more strongly in this case, as the *Acer* matter will address not only the

16  invalidity of the claims, but also the unenforceability of those claims due to inequitable conduct

17  before the U.S. Patent and Trademark Office and the infringement (or lack thereof) of the Chip

18  Suppliers' products.

19          *Second Analogous Situation – Stay of Litigation due to "Customer Suit" Doctrine*

20        The second analogous situation is the "customer suit" doctrine, as the Chip Suppliers have

21  discussed at length in their companion motion in the *Acer* matter.

22        Although this case does not present the exact situation covered by the "customer suit"

23  doctrine, many of same principles that guide that doctrine apply with equal if not greater force to this

---

[20] *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1380 (N.D. Cal. 1994).

[21] *Methode Elecs., Inc. v. Infineon Techs. Corp.*, 2000 WL 35357130, at *2-3 (N.D. Cal. Aug. 7, 2000); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).

[22] *ASCII*, 844 F. Supp. at 1381.

[23] *See Zilog, Inc. v. Quicklogic Corp.*, 2004 WL 2452850, at *3 (N.D. Cal. 2004).

1    matter.  In a nutshell, the "customer suit" doctrine is simply an exception to the "first-filed" rule,

2    which ordinarily requires that the first Federal district in which a litigation matter is filed will be the

3    one in which the litigation proceeds.  Under the "customer suit" doctrine, however, the "first filed"

4    rule does NOT apply when the first-filed matter is case between the patent owner and the customer or

5    customers of the manufacturer and seller of the infringing item.

6        Implicit in this "customer suit" doctrine is the principle that the patent litigation should be

7    conducted by the real party in interest – and the party in the best position to defend against the

8    substance of the patent claims.  Customers of the manufacturer, or even customers of customers, have

9    little incentive or ability to defend against claims of infringement, and so these cases are not given the

10   same preference or weight in deciding which of two or more matters filed in different Federal courts

11   should be permitted to proceed.[24]

12       Or, as other courts have stated it, "[t]he guiding principles in the customer suit exception

13   cases are efficiency and judicial economy ...."[25]  Under this doctrine, litigation against or by a

14   manufacturer of accused goods takes precedence over suits against the manufacturer's customers,

15   because "in reality, the manufacturer is the true defendant in a customer suit."[26]

16       As in the "customer suit" context, the manufacturers involved in a co-pending case are the

17   real parties in interest.  Those manufacturers – the Chip Suppliers – are in the best position to litigate

18   against USEI's claims of patent infringement because they have access to the highly technical and

19   propriety information that will be crucial to resolving those claims.  And similar to the "customer

20   _____

21   [24] *A.P.T.*, 698 F. Supp. at 721.

     [25] *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir.
22   2006); *See also, A.P.T., Inc. v. Quad Envtl. Tech. Corp., Inc.*, 698 F. Supp. 718, 721 (N.D. Ill. 1988)
     (customer-suit exception focuses on the real party in interest in a lawsuit against a mere customer
23   because the interests of judicial economy are best served by first disposing of the patentee-
     manufacturer suit); *See also, A.P.T., Inc. v. Quad Envtl. Tech. Corp., Inc.*, 698 F. Supp. 718, 721
24   (N.D. Ill. 1988) (same) and *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72
     S. Ct 219, 221 (1952).

25   [26] *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1465 (Fed. Cir. 1990), quoting *Codex Corp. v. Milgo
     Elec. Corp.*, 553 F.3d 735, 737-38 (1st Cir. 1977); *Ciena Corp. v. Nortel Networks*, 2005 U.S. Dist.
26   LEXIS 20095, *27 (E.D. Tex. May 19, 2005) (also citing *Codex*, 553 F.2d at 737-38) ("Underlying
     the customer-suit doctrine is the preference that infringement determinations should be made in suits
27   involving the true defendant in the plaintiff s suit, i.e., the party that controls the product s design,
     rather than in suits involving secondary parties, i.e. customers.").

28

suit" situation, permitting this matter to proceed against mere customers of customers (or even customers of customers of customers) of the real parties in interest amounts to a stunning waste of precious judicial resources and litigants' time and money.

## IV.    CONCLUSION

Evidently USEI created this monumental mess of a case for a very specific reason – to intimidate these defendants, none of whom have any technical background or understanding of the proprietary structure and operation of network interface adapter chips, into quick settlements.  After all, no one would have even the slightest notion as to how 15 separate defendants – all consumer products retailers or, in the case of Harley Davidson, a motorcycle manufacturer – would even begin to unscramble the morass of these claims or defend tens of thousands of computers and common office devices against infringement.  None of these defendants even has access to the underlying structures, features or functions of the accused semiconductor chips, as all of this information is highly confidential, proprietary information owned by each of the Chip Suppliers.

Permitting USEI to abuse its position as plaintiff in this way is simply unfair and contrary to all of the principles of equity and conservation of judicial resources that guide this Court's management of cases.  For this reason, and the reasons set forth by the Chip Suppliers in the *Acer* matter, the defendants here respectfully request that the Court stay this litigation while the Chip Suppliers and USEI – the real parties in interest here – continue with litigation in that matter.

Respectfully submitted,

Dated:  December 20, 2010

*/s/ Keith D. Fraser*
Scott R. Miller
Keith D. Fraser
Jeffrey L. Eichen (*pro hac vice*)
CONNOLLY BOVE LODGE & HUTZ LLP

**Attorneys for Defendants**
**THE DRESS BARN, INC.**

1

2                                         /s/ *Willem G. Schuurman* (with permission)
                                          Chuck P. Ebertin
3                                         Willem G. Schuurman (*pro hac vice*)
                                          Avelyn Marie Ross (*pro hac vice*)
4                                         Juliet M. Dirba (*pro hac vice*)
                                          VINSON & ELKINS LLP
5
                                          **Attorneys for Defendant**
6                                         **AT&T MOBILITY, LLC**

7                                         /s/ *Tonya M. Gray* (with permission)
8                                         Ralph W. Tarr, Esq.
                                          Attorney At Law
9
                                          Tonya M. Gray (*pro hac vice*)
10                                        Gerald C. Conley (*pro hac vice*)
                                          ANDREWS KURTH LLP
11
                                          Diane K. Lettelleir (to be admitted *pro hac*
12                                        *vice*)
                                          Senior Managing Counsel - Litigation
13                                        J.C. PENNEY CORPORATION, INC.

14                                        **Attorneys for Defendant**
                                          **J. C. PENNEY COMPANY, INC.**
15
                                          /s/ *Tonya M. Gray* (with permission)
16                                        Ralph W. Tarr, Esq.
                                          Attorney At Law
17
                                          Tonya M. Gray (*pro hac vice*)
18                                        Gerald C. Conley (*pro hac vice*)
                                          ANDREWS KURTH LLP
19
                                          **Attorneys for Defendants**
20                                        **ANN TAYLOR STORES CORPORATION**
                                          **and ANN TAYLOR RETAIL, INC.**
21
                                          /s/ *Andrew P. Valentine* (with permission)
22                                        Andrew P. Valentine
                                          Nicholas G. Papastavros
23                                        Melissa A. Reinckens
                                          DLA PIPER LLP (US)
24
                                          **Attorneys for Defendant**
25                                        **HOME DEPOT U.S.A., INC.**

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STAY
Case No. C 10-05254 JW

*/s/ Andrew P. Valentine* (with permission)
Andrew P. Valentine
John M. Guaragna
Brian K. Erickson
DLA PIPER LLP (US)

**Attorneys for Defendant**
**CLAIRE'S BOUTIQUES, INC.**

*/s/ William H. Baker* (with permission)
William H. Baker (*pro hac vice*)
Sean P. DeBruine
Jason W. Cook (*pro hac vice*)
Stacey White (*pro hac vice*)
Derek Neilson (*pro hac vice*)
Robert L. Lee (*pro hac vice* pending)
ALSTON & BIRD LLP

**Attorneys for Defendants**
**BARNES & NOBLE, INC.,**
**SALLY BEAUTY HOLDINGS, INC.,**
**NEW YORK & COMPANY, INC.,**
**LERNER NEW YORK, INC., AND**
**RADIOSHACK CORPORATION**

*/s/ Richard S. Mandaro* (with permission)
Anthony F. Lo Cicero (*pro hac vice*)
Richard S. Mandaro (*pro hac vice*)
AMSTER ROTHSTEIN & EBENSTEIN LLP

Martin R. Glick
Sarah J. Givan
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN, PC

**Attorneys for Defendants**
**MACY'S, INC.,**
**MACY'S RETAIL HOLDINGS, INC., AND**
**MACY'S WEST STORES, INC.**

*/s/ G. Scott Thomas* (with permission)
G. Scott Thomas (*pro hac vice* pending)
Wendee Hilderbrand (*pro hac vice* pending)
BASS, BERRY & SIMS, PLC

**Attorneys for Defendants**
**KIRKLAND'S, INC. AND**
**KIRKLAND'S STORES, INC.**

1

2          _/s/ Jeffrey Yee_ (with permission)
           Jeffrey K. Joyner (SBN 180485)
           Jeffrey F. Yee (SBN 193123)
3          GREENBERG TRAURIG, LLP

4          **Attorneys for Defendant
           RENT-A-CENTER, INC.**

5

6          _/s/ H. Wayne Porter_ (with permission)
           Christopher J. Renk (_pro hac vice_)
7          Bradley C. Wright (_pro hac vice_)
           Joseph M. Potenza (_pro hac vice_)
8          H. Wayne Porter (_pro hac vice_)
           BANNER & WITCOFF, LTD.

9
           William T. Mulvihill
10         BOORNAZIAN, JENSEN & GARTHE

11         **Attorneys for Defendants
           HARLEY-DAVIDSON, INC. AND
12         HARLEY-DAVIDSON MOTOR
           COMPANY, INC.**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28