Chuck P. Ebertin (SBN 161374)
VINSON & ELKINS LLP
525 University Avenue, Suite 410
Palo Alto, CA 94301-1918
Tel: 650-687-8200
Fax: 650-618-1970
cebertin@velaw.com

Willem G. Schuurman (pro hac vice)
Avelyn Marie Ross (pro hac vice)
James D. Shead (pro hac vice)
VINSON & ELKINS LLP
2801 Via Fortuna, Suite 100
Austin, Texas 78746-7568
Tel: 512-542-8400
Fax: 512-542-8612
bschuurman@velaw.com
aross@velaw.com
jshead@velaw.com

Attorneys for Defendant
AT&T MOBILITY, LLC

*ADDITIONAL DEFENDANTS AND INTERVENORS LISTED ON SIGNATURE PAGES*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| U.S. Ethernet Innovations, LLC,<br>　　　　Plaintiff,<br>　　v.<br>Acer, Inc., et al.,<br>　　　　Defendants,<br>Atheros Communications, Inc., et al.,<br>　　　　Intervenors.<br>────────────────────<br>AT&T Mobility, LLC, et al.,<br>　　　　Defendants. | Case No. 3:10-cv-03724 CW (LB)<br>Case No. 3:10-cv-05254 CW<br>Case No. 3:10-cv-03481 CW<br><br>RETAILER DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING STAY OF CLAIMS PENDING RESOLUTION OF CLAIMS AGAINST INTERVENORS AND ACER DEFENDANTS |

RETAILER DEFENDANTS' SUPPLEMENTAL
BRIEF REGARDING STAY OF CLAIMS
　　　　　　　　　　　　　　　　　　Case No. 3:10-cv-03724 CW (LB)
　　　　　　　　　　　　　　　　　　Case No. 3:10-cv-05254 CW
　　　　　　　　　　　　　　　　　　Case No. 3:10-cv-03481 CW

Zions Bancorporation,

        Plaintiff,

   v.

U.S. Ethernet Innovations, LLC,

        Defendant.

RETAILER DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING STAY OF CLAIMS

Case No. 3:10-cv-03724 CW (LB)
Case No. 3:10-cv-05254 CW
Case No. 3:10-cv-03481 CW

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................. 1

II. BACKGROUND ............................................................................................................... 2

III. THE AT&T LITIGATION SHOULD REMAIN STAYED........................................... 3

    A. A Stay is Within the Sound Discretion of the District Court................................ 3

    B. This Case is about the Network Interface Adapter Chips made by the Chip Suppliers in the Acer Litigation ............................................................ 4

        1. The Retailer Defendants lack relevant information. ................................ 5

        2. AT&T Mobility should remain in the AT&T Litigation, and should remain stayed. ....................................................................... 6

        3. The AT&T Litigation has always been about leverage, and not the merits. ........................................................................................ 7

        4. USEI will suffer no harm or prejudice if this case is stayed. ................... 8

    C. The "Customer Suit" Doctrine Strongly Favors Maintaining the Stay .................................................................................................................... 9

IV. CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

Page

**Cases**

*A.P.T., Inc. v. Quad Envtl. Tech. Corp.*,
   698 F. Supp. 718 (N.D. Ill. 1988) .................................................................................. 9

*Ciena Corp. v. Nortel Networks*,
   2005 U.S. Dist. LEXIS 20095 (E.D. Tex. May 19, 2005) ...................................... 9

*Codex Corp. v. Milgo Elec. Corp.*,
   553 F.2d 735 (1st Cir. 1977) ........................................................................................... 9

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ................................................................................................... 2, 8

*Filtrol Corp. v. Kelleher*,
   467 F.2d 242 (9th Cir. 1972) ..................................................................................... 3, 8

*Finisar Corp. v. Source Photonics, Inc.*,
   No. 10-032 (N.D. Cal. May 5, 2010) ........................................................................... 6

*Katz v. Lear Siegler, Inc.*,
   909 F.2d 1459 (Fed. Cir. 1990) ..................................................................................... 9

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 72 S. Ct 219 (1952) ................................................................................. 9

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ......................................................................................................... 3

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012) ......................................................................................... 5

*Quanta Computer, Inc. v. LG Elecs., Inc.*,
   553 U.S. 617 (2008) ................................................................................................... 1, 5

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
   458 F.3d 1335 (Fed. Cir. 2006) ..................................................................................... 9

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008) ............................................................................... 2, 8

*WiAV Networks, LLC v. 3Com Corp.*,
   2010 WL 3895047 (N.D. Cal. October 1, 2010) ..................................................... 6

**Statutes**

35 U.S.C. § 286 ...................................................................................................................... 2, 8

## I. INTRODUCTION

Pursuant to the Court's December 7, 2012 Order (Dkt. No. 403), the defendants and Zions Bancorporation[1] ("the Retailer Defendants") in this case ("the AT&T Litigation") hereby submit this Supplemental Brief Regarding Stay of Claims Pending Resolution of Claims Against Intervenors and Acer Defendants.

The AT&T Litigation is USEI's attempt to take a third bite of the same apple. In the Acer Litigation, USEI has accused network adapter chips provided by the Chip Suppliers of infringing four patents. It has also accused the same chips of infringing the same patents when sold in computers provided by the Computer Maker Defendants. With the Retailer Defendants, it is trying to recover a third time for the same chips from the end-users who bought or license and use the computers that contain them. The Supreme Court's opinion in *Quanta* forbids double—and here, triple—recovery for the same product. Resolving the claims against the Chip Suppliers will resolve liability for the Retailer Defendants. Because USEI's infringement contentions demonstrate that the liability of the Retailer Defendants is derivative of the allegations in the Acer Litigation, the Court should maintain the stay of the AT&T Litigation and Zions Litigation.

Maintaining the stay in this case in favor of the Acer Litigation will conserve judicial resources, create a fair and manageable process for adjudicating USEI's claims, and will not prejudice USEI. Notably, (i) the claims in the Acer Litigation will dispose of the claims in this case, (ii) continuing the stay in this case will simplify resolution of USEI's claims by eliminating unnecessary discovery of potentially thousands of accused products used by the Retailer Defendants that incorporate chips already at issue in the Acer case, (iii) the Retailer Defendants

---

[1] Like many of the other Retailer Defendants, Zions Bancorporation, a financial services holding company, is an end-user of computers that may contain certain accused chips. Many of the computers used by Zions Bancorporation are made by the Computer Makers that are named as Defendants in the Acer Litigation and presumably would be at issue in the Acer Litigation. After unsuccessful attempts to resolve USEI's infringement allegations, Zions Bancorporation filed a complaint for declaratory judgment of non-infringement, invalidity and unenforceability before this Court on August 6, 2010 ("Zions Litigation"). USEI filed its answer on March 4, 2011, however, it did not file a counterclaim for patent infringement, and has not served infringement contentions against Zions. This brief treats Zions as one of the Retailer Defendants.

| RETAILER DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING STAY OF CLAIMS | 1 | Case No. 3:10-cv-03724 CW (LB)<br>Case No. 3:10-cv-05254 CW<br>Case No. 3:10-cv-03481 CW |
|---|---|---|

have no information concerning the structure or operation of the Ethernet features at issue in this case, (iv) the Acer Litigation is comparatively advanced while the parties have not yet filed answers in this case; and (v) USEI, as a non-practicing entity asserting expired patents, is not entitled to injunctive relief [2] and its claims for damages will be unaffected by the stay.[3] For the sake of judicial efficiency and simple fairness, the Retailer Defendants respectfully request that this matter continue to be stayed while the real parties in interest, USEI and the Chip Suppliers, proceed with their claims in the Acer Litigation.

## II.   BACKGROUND

On October 9, 2009, U.S. Ethernet Innovations, LLC ("USEI") filed *U.S. Ethernet Innovations, LLC v. Acer, Inc., et al.*, Civil Action No. 4:10-cv-03724-CW ("the Acer Litigation"), against a series of computer manufacturers, alleging infringement of four patents because their computers incorporate network interface adapter chips ("chips"). Shortly thereafter, the *real defendants in interest* intervened in the Acer Litigation. Those real defendants - Intel, Atheros, Marvell, NVIDIA and Broadcom ("Chip Suppliers") – supply chips that USEI has accused of infringement. On March 10, 2010, USEI filed the AT&T Litigation. The Texas Court transferred the Acer Litigation to this District on August 19, 2010, and USEI consented to the transfer of the AT&T Litigation shortly thereafter.

On December 20, 2010, the Retailer Defendants sought a stay in this case "on the ground that Defendants are merely customers of the real parties in interest, whom Plaintiff has already sued in a different lawsuit."[4] The *next day*, the Court granted the stay without oral argument and without awaiting Plaintiff's opposition.[5] The stay was then partially lifted for the purposes of

---

[2] *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008).

[3] A prevailing plaintiff is generally entitled to recover damages for infringement occurring up to six years prior to the filing of the Complaint. 35 U.S.C. § 286.

[4] *See* Dkt. No. 246 at p. 1.

[5] *Id.*

| RETAILER DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING STAY OF CLAIMS | 2 | Case No. 3:10-cv-03724 CW (LB) Case No. 3:10-cv-05254 CW Case No. 3:10-cv-03481 CW |
|---|---|---|

claim construction, which has since been completed.[6]  However, nothing that occurred during claim construction reverses the wisdom in Judge Ware's initial stay order – the Retailer Defendants are not the true parties in interest.

### III.    THE AT&T LITIGATION SHOULD REMAIN STAYED

#### A.    A Stay is Within the Sound Discretion of the District Court

District courts have broad, inherent authority to reorganize and reorder the issues presented for litigation before them.[7]  This inherent authority includes the power to stay a case.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."[8]

According to the Ninth Circuit in *Filtrol Corp. v. Kelleher*, the decision to stay is based upon the court's sound discretion and basic principles of equity, fairness, efficiency and conservation of precious judicial resources.  When applied to this case, these principles weigh strongly in favor of continuing the stay of this case pending resolution of the claims between the Chip Suppliers and USEI in the Acer Litigation.

Judge Ware rightly used this power before, and the Court should reenter a stay.

The chips incorporated in products used by the Retailer Defendants are the sole basis for the infringement allegations, and all but one chip accused in the AT&T Litigation is already accused of directly infringing the same claims of the same patents in the Acer Litigation.  The Chip Suppliers are the real parties in interest, have sole possession of relevant information, and are taking an active and lead role in Acer Litigation, in which they intervened to protect their customers.  Because liability in the AT&T Litigation derives from liability in the Acer Litigation, the Court should exercise its discretion and maintain the stay that Judge Ware put in place.

---

[6] See Dkt. No. 255 at p. 2.

[7] *Filtrol Corp. v. Kelleher*, 467 F.2d 242, 244 (9th Cir. 1972).

[8] *Landis v. North American Co.*, 299 U.S. 248, 254 (1936).

RETAILER DEFENDANTS' SUPPLEMENTAL                    3              Case No. 3:10-cv-03724 CW (LB)
BRIEF REGARDING STAY OF CLAIMS                                       Case No. 3:10-cv-05254 CW
                                                                     Case No. 3:10-cv-03481 CW

**B.     This Case is about the Network Interface Adapter Chips made by the Chip Suppliers in the Acer Litigation**

Most of the Defendants in this action (10 out of 15) are large national chain retailers in the business of selling clothing, accessories, cosmetics or home furnishings.  Out of the remaining defendants, one is a hardware and home improvement retailer, one is a book, magazine and electronic reader retailer, one is a cell phone and cable television service provider and retailer, one is a consumer electronics and cell phone retailer, one manufactures and sells motorcycles and related accessories through independent dealerships, and one is a financial services holding company.  None of these businesses have anything to do with the technology in suit.

On April 4, 2011, USEI served infringement contentions on the Retailer Defendants.  <u>These charts are directed solely to the design and operation of the individual chips made by the Chip Suppliers in the Acer Litigation—they do not even identify any computers that use these chips</u>.  Judge Ware's first claim construction order confirmed that the patents focus on the adapters, not the Computers (or their users): "The Patents-In-Suit pertain to network interface adapters."[9]

For all but one accused chip in this case, USEI's infringement contentions simply cross-reference the accusations in infringement contention charts also served in the Acer Litigation, and do not even mention any products of the Defendants by name.  Indeed, almost all of the Retailer Defendants do not make any products at all – instead, like Macy's, Dress Barn and others, they are simply large chain retailers whose sole connection to the alleged infringement is that they happen to use Ethernet-enabled computers and printers in their stores and offices.

The issues in the AT&T Litigation are thus entirely derivative of the issues in the Acer Litigation.  The case against the Chip Suppliers will resolve all of the issues related to all but one chip currently asserted against the Retailer Defendants, since they are already accused of infringing the same claims in the Acer Litigation.  If the Chip Suppliers prevail on invalidity or unenforceability, then the case will be over for the Retailer Defendants.  Likewise, any finding of

---

[9] First Claim Construction Order, Dkt. 586.

non-infringement for a specific chip will remove that chip from the AT&T Litigation.  A finding of liability against a Chip Supplier will also exhaust USEI's claims against their downstream customers under the Supreme Court's *Quanta* opinion.[10]  USEI cannot recover damages twice (much less three times) for the same product – and all four patents expired on July 28, 2012.

### 1. The Retailer Defendants lack relevant information.

The accused chips are complicated semiconductors consisting of millions of transistors, whose design and operation is proprietary and unavailable to the Retailer Defendants.  None of the Retailer Defendants know how equipment allegedly incorporating the chips is constructed or operates, or even which specific chips are used in that equipment, and they do not possess any technical documents describing these chips.  The accused chips are simply one of hundreds of components located inside a product (*e.g.*, a computer) purchased by the Defendants.

Moreover, the financial information related to the sales of these chips will be produced by the Chip Suppliers. The Retailer Defendants buy or license and use computers and other similar devices; they do not specify or know the particular Ethernet adapter chips used in these computers, and they do not know what these chips cost.[11]  The chips accused by USEI are inexpensive, commodity components that are not touted with the sale of the computer. Sales information from the Retailer Defendants, who are simply end-users of these computers, is redundant and legally irrelevant under *Quanta*.

Despite the gulf separating the Retailer Defendants and the relevant facts, USEI has sought crushingly broad discovery on all Ethernet-enabled devices used by the Retailer Defendants.[12]

---

[10] *Quanta Computer, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 625-28 (2008).

[11] *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012).

[12] USEI initially requested information on ridiculously broad categories of potential accused products that the Retailer Defendants may use, including a detailed accounting of "all laptop or portable computers," "all cable modems," and "all other Ethernet-capable devices of any kind." *See e.g.*, June 16, 2010 letter to Willem Schuurman (attached as Ex. A).  *See also* USEI's Requests for Documents and Things Upon Defendant AT&T Mobility, Inc. (attached as Ex. B) at p. 6-7, requesting a detailed accounting of any "device that includes an Ethernet port" used by any employee since March 1, 2004.  Similar letters and RFPs were served on the other Retailer Defendants.  Further, on December 7, 2012, USEI represented to counsel for Macy's that it would only agree to a continued stay for the Retailer Defendants if they would undertake the extensive

USEI contends that any device with an Ethernet network adapter chip is relevant to discovery, and wants an accounting of all such products that a Retailer Defendant buys, uses, or resells in its normal business operations. Any discovery related to the chips themselves will need to come from the companies who design and manufacture these adapter chips, and the large costs and impositions USEI's proposed discovery will impose on each Retailer Defendant are an unreasonable and unnecessary burden in light of the Acer Litigation. Because this case is redundant with the Acer Litigation, it appears likely that USEI seeks intrusive discovery of end users in this case primarily as a ploy to force large cost-of-litigation settlements on parties who do not possess any of the information needed to defend themselves.

Allowing the case against the Retailer Defendants to proceed would not only duplicate the work in the Acer Litigation, it would severely burden the Retailer Defendants who have no real connection to the relevant facts.[13] Furthermore, the Acer Litigation is more advanced in time than the AT&T Litigation. A continued stay pending resolution of the claims between USEI and the Chip Suppliers is a sensible and reasonable means of lessening the inefficiency, burden and inherent unfairness of USEI's intentionally created mess.

### 2. AT&T Mobility should remain in the AT&T Litigation, and should remain stayed.

The sole exception to the exact duplication of infringement contention charts between the Acer Litigation and the AT&T Litigation is Claim Chart 34. This chart is directed to Ethernet functionality provided by a Sigma Designs chip in the AT&T U-verse settop box.[14] Although the chart names the U-verse box, it includes no other detail about it, and focuses only the design of the

---

and costly internal investigation to provide usage statistics of all products listed in unspecified "categories" of products that they would later define. *See* Declaration of Anthony LoCicero (attached as Ex. C). The Retailer Defendants have no reason to believe USEI will be any more tailored in their request than the June 2010 letter.

[13] *See WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at *1 (N.D. Cal. October 1, 2010) (condemning joinder of such a large number of unrelated parties); *Finisar Corp. v. Source Photonics, Inc.*, No. 10-032 (N.D. Cal. May 5, 2010) (same).

[14] Although Sigma Designs is not a party to this case, USEI chose not to sue Sigma Designs even though Sigma is based in Northern District of California.

chip.  Beyond the information cited by USEI in its contentions, AT&T Mobility has no information regarding the structure, function, operation, or total sales of the accused Sigma chip.  Nor does AT&T Mobility have any direct contractual relationship with Sigma, but is merely a customer of a customer of a customer of Sigma.

On this basis, USEI has urged that AT&T should be treated as one of the Computer Makers in the Acer Litigation, and not a Retailer Defendant.  The identification of a single product, when thousands of separate products are already at issue in the Acer Litigation, does not justify moving AT&T into the Acer Litigation.

### 3. The AT&T Litigation has always been about leverage, and not the merits.

On February 20, 2010, the Acer Defendants met and conferred with USEI regarding a motion to transfer the case from the Eastern District of Texas to this District.  On March 9, 2010, the Acer Defendants filed their motion.  The next day, USEI filed the AT&T Litigation in the Eastern District of Texas to bolster its arguments against the *Acer* transfer motion.  The basis for USEI's allegations in the AT&T Litigation are, with one lone exception, a mere cut-and-paste of the same infringement contentions regarding the exact same chips, patents, and claims at issue in the Acer Litigation and defended by the real parties in interest, the Chip Suppliers.[15]

Tellingly, USEI cited the AT&T Litigation in its opposition papers to the Acer Litigation venue transfer motion as an important reason to deny transfer, citing the mere existence of the AT&T Litigation as a primary reason to deny transfer—even before details of the Acer Litigation defendants.[16]

---

[15] The lone exception is a chip from Sigma Designs, and is one of approximately four dozen chips in infringement allegations asserted against AT&T Mobility.  Like the remaining Chip Suppliers, Sigma Designs has all information related to the structure, function, operation, design, and sales of the accused chip, whereas AT&T Mobility has none.  Sigma Designs is based in the Northern District of California, and yet USEI has chosen not to sue Sigma Designs, and instead is apparently using this single outlier chip as impermissible leverage to keep at least one Retailer Defendant in the case.

[16] See 6:09-cv-00448-JDL Dkt. No. 174 at p. 1.

| RETAILER DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING STAY OF CLAIMS | 7 | Case No. 3:10-cv-03724 CW (LB)<br>Case No. 3:10-cv-05254 CW<br>Case No. 3:10-cv-03481 CW |
|---|---|---|

**4.     USEI will suffer no harm or prejudice if this case is stayed.**

USEI has not invested any effort into this case, separate and apart from the Acer Litigation, that would be lost by a stay: fact discovery has not begun and a trial date has not yet been set. A stay would not affect the amount of damages collectable by USEI, as a prevailing plaintiff is generally entitled to recover damages for infringement occurring up to six years prior to the filing of the complaint, and the patents have expired.[17]

Importantly, USEI is not entitled to injunctive relief in this case.[18] All four of the patents in suit have expired. USEI does not manufacture network interface adapter chips, computers or any other devices or products. USEI does not compete with any of the defendants here or in the Acer Litigation, and USEI has not lost a single customer or sale because of any act of alleged infringement.

Finally, the four patents-in-suit were issued between 1994 and 1998, and yet USEI and its predecessor waited **approximately 15 years** before bringing these claims against the Retailer Defendants. The Retailer Defendants in this case are all well-known businesses that were in existence long before 1994. Each of the defendants is an on-going business that can be pursued for past patent infringement liability, if any, two or three years from now as easily as today. Given the plaintiff's own extensive delay, it strains credulity for USEI to now argue that a comparatively small additional delay would prejudice USEI.

In short, the factors identified by the Ninth Circuit in *Filtrol* demonstrate that a stay is appropriate in the instant case in favor of the Acer Litigation, which is likely to resolve all dispositive issues in this case. USEI would not be prejudiced by a stay; however, if this case were to proceed, the Retailer Defendants would be forced to endure duplicative, complex, burdensome, technical, and unnecessary litigation.

---

[17] 35 U.S.C. § 286.

[18] *See eBay Inc.*, 547 U.S. at 391; *Voda*, 536 F.3d at 1329.

RETAILER DEFENDANTS' SUPPLEMENTAL          8          Case No. 3:10-cv-03724 CW (LB)
BRIEF REGARDING STAY OF CLAIMS                         Case No. 3:10-cv-05254 CW
                                                        Case No. 3:10-cv-03481 CW

### C. The "Customer Suit" Doctrine Strongly Favors Maintaining the Stay

The "customer suit" doctrine holds that patent litigation should be conducted by the real party in interest – and the party in the best position to defend against the substance of the patent claims.[19] Customers of the manufacturer, or even customers of customers, have little ability to defend against claims of infringement, and so these cases are not given the same preference or weight in deciding which of two or more matters filed in different Federal courts should be permitted to proceed.[20] Or, as other courts have stated it, "[t]he guiding principles in the customer suit exception cases are efficiency and judicial economy …."[21] Under this doctrine, litigation against or by a manufacturer of accused goods takes precedence over suits against the manufacturer's customers, because "in reality, the manufacturer is the true defendant in the customer suit."[22]

Here, the manufacturers involved in the Acer Litigation are the real parties in interest. Those manufacturers – the Chip Suppliers – are in the best position to litigate against USEI's claims of patent infringement because they have access to the highly technical and propriety information that will be crucial to resolving those claims. And similar to the "customer suit" situation, permitting this matter to proceed against mere customers of customers (or even customers of customers of customers) of the real parties in interest amounts to a waste of precious judicial resources and litigants' time and money.

---

[19] *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990), quoting *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977); *Ciena Corp. v. Nortel Networks*, 2005 U.S. Dist. LEXIS 20095, *27 (E.D. Tex. May 19, 2005) (also citing *Codex*, 553 F.2d at 737-38) ("Underlying the customer-suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant in the plaintiff s suit, i.e., the party that controls the design, rather than in suits involving secondary parties, i.e. customers.").

[20] *A.P.T., Inc. v. Quad Envtl. Tech. Corp.,* 698 F. Supp. 718, 721 (N.D. Ill. 1988).

[21] *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1343 (Fed. Cir. 2006); *See also, A.P.T.*, 698 F. Supp. at 721 (customer-suit exception focuses on the real party in interest in a lawsuit against a mere customer because the interests of judicial economy are best served by first disposing of the patentee-manufacturer suit); *See also, A.P.T., Inc. v. Quad Envtl. Tech. Corp.,* 698 F. Supp. 718, 721 (N.D. Ill. 1988) (same) and *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, 72 S. Ct 219, 221 (1952).

[22] *Katz*, 909 F.2d at 1464, quoting *Codex*, 553 F.2d at 737-38.

Even if a stray accused chip is manufactured by a party who is not in the case, the overwhelming majority of the accused chips will be resolved by the Chip Suppliers in the Acer Litigation.[23]

**IV.  CONCLUSION**

USEI started the AT&T Litigation for a specific reason – to fight a motion to transfer in the Acer Litigation and to intimidate settlements from the Retailer Defendants based on products about which they have no detailed information about.  Permitting USEI to abuse its position as plaintiff in this way is simply unfair and contrary to all of the principles of equity and conservation of judicial resources that guide this Court's management of cases.  For these reasons, the Retailer Defendants hereby respectfully request that the Court maintain the stay in this litigation while the Chip Suppliers and USEI – the real parties in interest here – continue with litigation in that matter.

Respectfully Submitted,

**AT&T DEFENDANTS:**

DATED:  December 14, 2012             VINSON & ELKINS LLP

By: */s/ James D. Shead*
    James D. Shead, jshead@velaw.com
Counsel for AT&T MOBILITY, LLC

DATED:  December 14, 2012             ALSTON & BIRD LLP

By: */s/ Jason W. Cook*
    Jason W. Cook, jason.cook@alston.com
Counsel for Sally Beauty Holdings, Inc., Barnes & Noble, Inc., RadioShack Corporation, New York & Company, Inc. and Lerner New York, Inc.

DATED:  December 14, 2012             CONNOLLY BOVE LODGE & HUTZ LLP

By: */s/ Jeffrey L. Eichen*
    Jeffrey L. Eichen, jeichen@cblh.com
Counsel for The Dress Barn, Inc.

---

[23] *E.g.*, of the approximately four dozen network interface chips accused against AT&T Mobility, USEI has accused **one** that does not have a Chip Supplier in the Acer Litigation.

RETAILER DEFENDANTS' SUPPLEMENTAL        10         Case No. 3:10-cv-03724 CW (LB)
BRIEF REGARDING STAY OF CLAIMS                      Case No. 3:10-cv-05254 CW
                                                    Case No. 3:10-cv-03481 CW

| | |
|---|---|
| DATED:  December 14, 2012 | AMSTER ROTHSTEIN & EBENSTEIN LLP |

By: */s/ Richard S. Mandaro*
    Anthony F. LoCicero, alocicero@arelaw.com
Counsel for Macy's, Inc., Macy's Retail
Holdings, Inc., and Macy's West Stores, Inc.

| | |
|---|---|
| DATED:  December 14, 2012 | BANNER & WITCOFF, LTD. |

By: */s/ H. Wayne Porter*
    H. Wayne Porter, wporter@bannerwitcoff.com
Counsel for Harley-Davidson, Inc. and
Harley-Davidson Motor Company, Inc.

| | |
|---|---|
| DATED:  December 14, 2012 | DLA PIPER LLP (US) |

By: */s/ John M. Guaragna*
    John M Guaragna**,** john.guaragna@dlapiper.com
Counsel for Claire's Boutiques, Inc.

| | |
|---|---|
| DATED:  December 14, 2012 | BASS, BERRY & SIMS, PLC |

By: */s/ Wendee Hilderbrand*
    Wendee Hilderbrand, whilderbrand@bassberry.com
Counsel for Kirkland's Inc. and Kirkland's Stores, Inc.

| | |
|---|---|
| DATED:  December 14, 2012 | ANDREWS KURTH LLP |

By: */s/  Tonya M. Gray*
    Tonya M. Gray, tonyagray@andrewskurth.com
Counsel for Ann Taylor Stores Corporation, Ann Taylor
Retail, Inc., and J.C. Penney Company

| | |
|---|---|
| DATED:  December 14, 2012 | GREENBURG TRAURIG, LLP |

By: */s/ Jeffrey F. Yee*
    Jeffrey F. Yee, yeej@gtlaw.com
    Jeffrey K. Joyner, joynerj@gtlaw.com
Counsel for Rent-A-Center, Inc.

**ZIONS BANCORPORATION**

| | |
|---|---|
| DATED:  December 14, 2012 | WILEY REIN LLP |

By: */s/ Anthony H. Son*
    Anthony H. Son, ason@wileyrein.com
Counsel for Zions Bancorporation

**ACER DEFENDANTS AND INTERVENORS:**

DATED: December 14, 2012                FISH & RICHARDSON P.C.

By: */s/ Seth M. Sproul*
　　Seth M. Sproul, sproul@fr.com
Counsel for Intervenor INTEL CORPORATION

DATED: December 14, 2012                FREITAS, TSENG & KAUFMANN LLP

By: */s/ Kevin C. Jones*
　　Kevin C. Jones, jones@ftklaw.com
Counsel for Acer, Inc., Acer America Corporation, and Gateway, Inc.

DATED: December 14, 2012                WILLIAMS MORGAN & AMERSON PC

By: */s/ Danny Williams*
　　Danny Williams, danny@wmalaw.com
Counsel for Apple Inc.

DATED: December 14, 2012                COOLEY LLP

By: */s/ Matthew J. Brigham*
　　Matthew J. Brigham, mbrigham@cooley.com
Counsel for ASUS Computer International and ASUSTeK Computer Inc.

DATED: December 14, 2012                K&L GATES LLP

By: */s/ Roderick B. Williams*
　　Roderick B. Williams, rick.williams@klgates.com
Counsel for Hewlett Packard Co.

DATED: December 14, 2012                FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP

By: */s/ Lionel M. Lavenue*
　　Lionel M. Lavenue, lionel.lavenue@finnegan.com
Counsel for Sony Corp., Sony Corp. of America and Sony Electronics Inc.

1  DATED: December 14, 2012				REED SMITH LLP

2						By: /s/ Jonah D. Mitchell
						Jonah D. Mitchell, jmitchell@reedsmith.com
3						Counsel for Intervenor Atheros Communications, Inc.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| U.S. Ethernet Innovations, LLC,<br>       Plaintiff,<br>   v.<br>Acer, Inc., et al.,<br>       Defendants,<br>Atheros Communications, Inc., et al.,<br>       Intervenors.<br>_____<br>AT&T Mobility, LLC, et al.,<br>       Defendants.<br>_____<br>Zions Bancorporation,<br>       Plaintiff,<br>   v.<br>U.S. Ethernet Innovations, LLC,<br>       Defendant. | Case No. 3:10-cv-03724 CW (LB)<br>Case No. 3:10-cv-05254 CW<br>Case No. 3:10-cv-03481 CW<br><br>[PROPOSED] ORDER GRANTING RETAILER DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING STAY OF CLAIMS PENDING RESOLUTION OF CLAIMS AGAINST INTERVENORS AND ACER DEFENDANTS |

     Came on to be heard Retailer Defendants' Supplemental Motion to Stay. After consideration of the pleadings filed and hearing evidence and argument of counsel, the Court finds that good cause is appearing to GRANT the motion.

     IT IS THEREFORE ORDERED that Retailer Defendants' Supplemental Motion to Stay is GRANTED.

     IT IS FURTHER ORDERED that Case No. 3:10-cv-05254 and Case No. 3:10-cv-03481 are hereby stayed at least pending resolution of Case No. 3:10-cv-03724 CW (LB).

DATED:_____   _____
                                                                   HONORABLE CLAUDIA WILKEN
                                                                   UNITED STATES CHIEF DISTRICT JUDGE

[PROPOSED] ORDER GRANTING RETAILER
DEFENDANTS' SUPPLEMENTAL BRIEF
REGARDING STAY OF CLAIMS

Case No. 3:10-cv-03724 CW (LB)
Case No. 3:10-cv-05254 CW
Case No. 3:10-cv-03481 CW